UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| ANTONIO HINES,<br><br>Plaintiff,<br><br>vs.<br><br>TA SERVICES, INC.,<br><br>Defendant. | 4:24-CV-04025-RAL<br><br>OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS IN PART AND TRANSFERRING CASE |

TA Services, Inc. (TA Services), the lone remaining defendant in this case, seeks dismissal for improper service prior to the statute of limitations running and for lack of personal jurisdiction. Doc. 62. Adequate service of process took place on TA Services, but under the circumstances of this case, TA Services is not subject to personal jurisdiction in the District of South Dakota. Thus, this Court denies the motion to dismiss in part and transfers the case to a district with personal jurisdiction over TA Services.

## I. Facts[1]

This action arises from a multi-vehicle accident that occurred on March 17, 2023, in South Dakota. Doc. 1. Plaintiff Antonio Hines filed his initial Complaint on February 7, 2024, and, with leave of court, an Amended Complaint, Doc. 32, one year later. Hines later obtained new counsel who obtained leave to file a Second Amended Complaint, which was filed on February 20, 2026,

[1] This Court takes the facts primarily from Hines's Second Amended Complaint, Doc. 52, but makes no findings of fact. Hines's Second Amended Complaint is over sixty pages long. Only facts relevant to the claim against TA Services and its Motion to Dismiss appear here.

and named for the first time TA Services as one of the defendants. Doc. 52. Hines has settled his claims with all Defendants except TA Services. Docs. 73.

Hines is a resident of the State of Georgia. Doc. 52 ¶ 1. TA Services is a Texas corporation with its principal place of business in Mansfield, Texas. Id. ¶ 9. TA Services is a registered motor carrier, freight forwarder, and broker with the United States Department of Transportation (USDOT). Id. ¶ 11. TA Services is registered under USDOT number 281902, Motor Carrier number 183070, and Freight Forwarder number 36022. Id.

On March 17, 2023, Hines was driving a tractor-trailer on Interstate 90 in Aurora County, South Dakota, traveling eastbound in the right lane. Id. ¶¶ 84, 94. Raymond Rosado was driving a tractor-trailer behind Hines's vehicle, traveling eastbound in the right lane on Interstate 90. Id. ¶ 84. Interstate 90 in this part of South Dakota is a four-lane split interstate highway with two eastbound and two westbound lanes of travel separated by a median with a speed limit of eighty miles per hour. Id. ¶ 85–86. At the time, "travel conditions were poor due to icy roads, snow, and severe wind which caused whiteout conditions." Id. ¶ 87. Hines had slowed down to approximately ten miles per hour due to the road conditions. Id. ¶ 96. Rosado was driving at fifty-six miles per hour when Hines's vehicle first became visible to Rosado. Id. ¶ 92. "Rosado maintained a speed of fifty-five to fifty-six miles per hour until he attempted to stop." Id. ¶ 93. "Rosado failed to stop his tractor-trailer in time and slammed into the trailer of [Hines's] tractor-trailer causing it to disconnect from the tractor and smash into the back of [Hines's] cab." Id. ¶ 103. At the time of impact, Rosado was traveling at a speed of approximately forty-seven miles per hour, and the collision "caused [Hines] to whiplash back into his seat." Id. ¶ 104. Two additional drivers headed eastbound on Interstate 90 then collided into Rosado's and Hines's vehicles. Id. ¶¶ 109–125.

Rosado was the President of R&O Trans Services, Inc.,[2] at the time. Id. ¶ 30. Proquality Transportation & Logistics Services LLC (Proquality), of Puyallup, Washington, had hired Rosado to operate a Proquality tractor-trailer. Id. ¶¶ 3, 34–35. TA Services in turn had retained Proquality to transport the load. Id. ¶ 44. "TA Services entered into a transportation agreement with the shipper under which [] TA Services agreed, for compensation, to arrange and/or provide interstate transportation for the subject freight." Id. ¶ 43. Proquality accepted the load and transported it through its employee or agent Rosado, leading to the accident described above. Id. ¶¶ 45–46.

Hines's Second Amended Complaint asserts a claim against TA Services for negligent entrustment. Id. ¶¶ 168–176. For this claim, Hines pleads that TA Services was acting as a freight forwarder[3] or broker[4] registered with the Federal Motor Carrier Safety Administration (FMCSA) and agreed to arrange transportation for the freight Rosado was hauling on March 17, 2023. Id. ¶ 169. TA Services then selected and entrusted the freight to Proquality "as a separate for-hire motor

---

[2] The Second Amended Complaint refers to "Rosado and/or R&O" repeatedly. Doc. 52 ¶¶ 30, 38–41, 46, 63. This Court uses "Rosado" to refer to both.

[3] Freight Forwarder is defined as

> a person holding itself out to the general public . . . to provide transportation of property for compensation and in the ordinary course of its business—
> (A) assembles and consolidates, or provides for assembling and consolidating, shipments and performs or provides for break-bulk and distribution operations of the shipments;
> (B) assumes responsibility for the transportation from the place of receipt to the place of destination; and
> (C) uses for any part of the transportation a carrier subject to jurisdiction under this subtitle.

49 U.S.C. § 13102(8).

[4] Broker is defined as "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2).

carrier[5] to haul by commercial motor vehicle on public highways, knowing that Proquality as a motor carrier would further entrust the load to [Rosado]." Id. ¶ 170. "At the time of the entrustment, [] TA Services knew or, in the exercise of reasonable care, should have known that [] Proquality as a motor carrier had an unsafe and deficient safety record—including prior crashes, regulatory violations, and adverse safety indicators—demonstrating it was unfit to safely transport the load or responsibly select and oversee a sub-carrier like [Rosado]." Id. ¶ 172. "Despite these red flags, [] TA Services breached its duty by entrusting the load to [] Proquality, creating an unreasonable and foreseeable risk that the load would be negligently handled and cause harm to the motoring public, including [Hines]." Id. ¶ 173.

After filing the Second Amended Complaint on February 20, 2026, with the three-year South Dakota limitations period[6] on personal injury claims set to run on March 17, 2026, Hines served a registered agent for TA Services. As the Second Amended Complaint alleges: "According to the Federal Motor Carrier Safety Administration, [] TA Services [] can be served with a copy of the Second Amended Complaint and Summons by and through its registered agent, Interstate Prorate, Inc. [(Prorate)] at 1313 E. St. Patrick St., Suite 317, Rapid City, South Dakota 57701." Id. ¶ 10. Hines filed a Sheriff's Return of Service, Doc. 59, indicating that service occurred on Prorate's Manager Norma Snyder at 300 Kansas City St., Rapid City, South Dakota 57701 on March 5, 2026.

TA Services's Motion to Dismiss asserts insufficient service of process and lack of personal jurisdiction. Doc. 62. TA Services maintains that Prorate is the incorrect process agent

---

[5] Motor Carrier is defined as "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14).

[6] Washington law, which may govern the negligent entrustment claim, similarly appears to have a three-year statute of limitations. Wash. Rev. Code. § 4.16.080. The parties did not brief choice-of-law issues, which accordingly are not addressed here.

for TA Services in its broker capacity, through which it hired Proquality who in turn hired Rosado. Doc. 63 at 3–4. Rather, Prorate is the process agent for TA Services in its freight forwarder capacity. Id. After TA Services's motion, Hines served the person TA Services identified as its process agent for its broker authority—Kevin Kringen at 219 NE 1st Street, Madison, South Dakota 57042. Doc. 69. That service occurred on April 13, 2026, about one month after the statute of limitations for personal injury claims in South Dakota had run. Id.

Supporting its argument for an absence of personal jurisdiction, TA Services filed two affidavits by Tyson Kisor, in-house legal counsel for TA Services. Docs. 66, 72. In his affidavits, Kisor avers that under the Broker Agreement between TA Services and Proquality, "Proquality was to act as an independent contractor," and as such, Proquality "exercised exclusive control over the means and methods of carrying out its contractual obligations." Doc. 72 ¶ 25; see also Doc. 72-1 ("[Proquality] warrants that it is an independent contractor and exercises exclusive control over its equipment, employees, and the means and methods of carrying out its contractual obligations."). "The Shipment Confirmation between TA Services[] and Proquality simply provided that the goods should be picked up at Bybee Produce, LLC in Prosser, Washington and be delivered to Baldor in Bronx, New York. Proquality was not required to follow a specific route in order to deliver the produce." Doc. 72 ¶ 26; see also Doc. 72-10. Hines opposes the motion to dismiss and proposes that discovery be allowed into the relationship between TA Services and Proquality. Doc. 70.

## II. Discussion

### A. Insufficient Service of Process

TA Services moves to dismiss the Second Amended Complaint for insufficient service of process. Doc. 62. Under Federal Rule of Civil Procedure 12(b)(5), a court may dismiss a

complaint for "insufficient service of process." To defeat a motion to dismiss for insufficient service of process, a plaintiff is "required to establish only a prima facie case" that the defendant was served properly. Northrup King Co. v. Compania Productora Semilla Algodoneras Selectas, S.A., 51 F.3d 1383, 1387 (8th Cir. 1995). Under the Federal Rules of Civil Procedure, a corporate entity in the United States must be served in the manner permitted for personal service on an individual under Rule 4(e)(1) or "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h). Service on individuals within a judicial district may be accomplished in accordance with state law. Fed. R. Civ. P. 4(e)(1). Service is proper under state law if the plaintiff "follow[ed] state law for serving a summons in an action brought in the courts of general jurisdiction in the state where the district court is located or where service is made." Id.

Because Hines venued the case and attempted service on TA Services in South Dakota, Docs. 59, 69, South Dakota law controls whether service under state law was proper. Under SDCL § 15-6-4(d)(1), service "on the president, partner or other head of the entity, officer, director, or registered agent" of the business entity constitutes personal service. Hines timely served a registered agent for TA Services, though TA Services contends it was the wrong registered agent for its broker authority.

South Dakota law recognizes "that 'actual notice coupled with substantial compliance is sufficient to satisfy personal service of process requirements.'" R.B.O. v. Congregation of Priests of Sacred Heart, Inc., 806 N.W.2d 907, 911 (S.D. 2011) (quoting Wagner v. Truesdell, 574 N.W.2d 627, 629 (S.D. 1998).

> "Substantial compliance" with a statute means actual compliance in respect to the substance essential to every reasonable objective of the statute. It means that a

> court should determine whether the statute has been followed sufficiently so as to carry out the intent for which it was adopted. Substantial compliance with a statute is not shown unless it is made to appear that the purpose of the statute is shown to have been served. What constitutes substantial compliance with a statute is a matter depending on the facts of each particular case.

Wagner, 574 N.W.2d at 629 (citation omitted). The Supreme Court of South Dakota's holding in Wagner, adopting the substantial compliance rule, was a "narrow one." Id. at 629 n.2.

The Supreme Court of South Dakota has held that the purpose of service of process is to "advise the defendant that an action or proceeding has been commenced against him by plaintiff, and warn him that he must appear within a time and at a place named and make such defense as he has." Id. (cleaned up and citation omitted). "Actual notice will not subject defendants to personal jurisdiction absent *substantial compliance* with the governing service-of-process statute." R.B.O., 806 N.W.2d at 912.

Hines claims to have properly served TA Services through one of its process agents under the FMCSA. Under 49 U.S.C. § 13304(a):

> A motor carrier or broker providing transportation subject to jurisdiction under chapter 135, including a motor carrier or broker operating within the United States . . . shall designate an agent in each State in which it operates by name and post office address on whom process issued by a court with subject matter jurisdiction may be served in an action brought against that carrier or broker. The designation shall be in writing and filed with the Department of Transportation and each State in which the carrier operates may require that an additional designation be filed with it. If a designation under this subsection is not made, service may be made on any agent of the carrier or broker within that State.

49 U.S.C. § 13304(a). Under 49 C.F.R. § 366.4:

> (a) Every motor carrier . . . must designate process agents for all 48 contiguous States and the District of Columbia, unless its operating authority registration is limited to fewer than 48 States and DC. When a motor carrier's operating authority registration is limited to fewer than 48 States and DC, it must designate process agents for each State in which it is authorized to operate and for each State traversed during such operations. . . .
> (b) Brokers. Every broker shall make a designation for each State, including DC, in which its offices are located or in which contracts will be written.

> (c) Freight forwarders. Every freight forwarder shall make a designation for each State, including DC, in which its offices are located or in which contracts will be written.

49 C.F.R. § 366.4. To fulfill this requirement, a motor carrier, broker, or freight forwarder may file a Form BOC-3, 49 C.F.R. § 366.2, and designate a "blanket company," which is "an association or corporation [that] has filed with the FMCSA a list of process agents for each state and DC (blanket agent)." 49 C.F.R. § 366.5.

Hines contends that since he served a listed process agent for USDOT number 281902 (TA Services's USDOT number for its broker and freight forwarder authorities) he sufficiently served TA Services. Doc. 70 at 7–13. Hines points to 49 C.F.R. § 366.2, which requires "only one completed current form [to] be on file." Id. at 12. Hines argues the distinction between TA Services's broker and freight forwarder authorities is irrelevant to proper service because TA Services is a single entity, operates both its broker and freight forwarder authorities under USDOT number 281902, and received service through a listed Form BOC-3 process agent. Id. at 11–13. TA Services contends that Hines did not serve the designated agent for its broker capacity, thereby failing to strictly comply with service requirements. Doc. 71 at 5. To counter Hines's argument that only one completed Form BOC-3 may be on file, TA Services interprets the regulation to provide that one Form BOC-3 may be on file for each motor carrier, broker, and freight forwarder, allowing the different authorities to have separate forms and thus separate process agents for each authority. Id. TA Services argues that because Hines failed to serve the designated process agent for its broker authority and the statute of limitations had run by the time he served the correct process agent, his Second Amended Complaint should be dismissed for insufficient service of process. Id. at 5–6.

Hines has made a prima facie showing that he complied with service of process requirements on TA services within the limitations period. Under Federal Rule of Civil Procedure

4(h), service of process on a corporation is effectuated "by delivering a copy of the summons and of the complaint to . . . any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). "[A]ny agent who accepts service must be shown to have been authorized to bind his principal by the acceptance of process," Schwarz v. Thomas, 222 F.2d 305, 308 (D.C. Cir. 1955), either explicitly or "implied in fact," United States v. Ziegler Bolt & Parts Co., 111 F.3d 878, 881 (Fed. Cir. 1997); see also 4A Wright & Miller's Federal Practice & Procedure § 1097 (4th ed. 2026) ("The federal courts look to the circumstances of the agency relationship, and although authority to accept process need not be explicit, it must either be express or implied from the type of relationship that has been established between the defendant and the alleged agent.").

TA Services designated Prorate as its process agent to receive service of process for it on its Form BOC-3 to comply with the FMCSA. Although Prorate was designated for TA Services's freight forwarder authority, TA Services is a single entity, and it designated Prorate as one of its process agents under USDOT number 281902. TA Services designated Prorate for the specific purpose of receiving process on its behalf and unquestionably received service and notice of the suit through its registered agent Prorate. See West v. Am. Honda Motor Co., No. 08-0700, 2008 WL 4104683, at *4 (D.N.J. Aug. 28, 2008) (citation omitted). While TA Services argues it was improper to serve its freight forwarder process agent in South Dakota, the Second Amended Complaint alleges that TA Services was acting as a freight forwarder *or* broker in arranging the freight delivery that is the subject of this lawsuit.[7] Doc. 52 ¶ 169. Since Hines had a sheriff

[7] A decision that a plaintiff such as Hines must choose the correct in-state registered agent out of multiple in-state registered agents could lead to the mischief of a corporation designating multiple in-state registered agents for various divisions or functions and then claiming insufficient service or limitations periods having run when a plaintiff guesses wrong on which in-state registered agent the corporation has designated for particular functions. There is no evidence that TA Services

personally serve TA Services's South Dakota registered agent Prorate and there is a Sheriff's return of service indicating Prorate was personally served on March 5, 2026, Hines has established a prima facie case that he properly served TA Services. Northrup King Co., 51 F.3d at 1387.

Because Hines has established a prima facie case that service on Prorate complied with Federal Rule of Civil Procedure 4(h)(1)(B) and that service was made on March 5, 2026, his claim is timely under South Dakota's three-year statute of limitations for personal injuries stemming from the multi-vehicle accident that occurred on March 17, 2023. Doc. 59; SDCL § 15-2-14. The motion to dismiss for improper service within the statute of limitations is denied.

**B. Lack of Personal Jurisdiction**

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that personal jurisdiction exists, which is accomplished by pleading sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the state." K-V Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 591–92 (8th Cir. 2011) (cleaned up and citation omitted). "Although the evidentiary showing required at the prima facie stage is minimal the showing must be tested, not by the pleadings alone, but by the affidavits and exhibits supporting or opposing the motion." Id. at 592 (cleaned up and citations omitted). "At the motion stage, the action should not be dismissed for lack of jurisdiction if the evidence, viewed in the light most favorable to [Plaintiff], is sufficient to support a conclusion that the exercise of personal jurisdiction over [Defendant] is proper." Creative Calling Sols., Inc. v. LF Beauty Ltd., 799 F.3d 975, 979 (8th Cir. 2015).

---

designated two in-state registered agents for that reason, but such strategy could ensue from a decision finding insufficient service of process here.

A federal court sitting in diversity may exercise jurisdiction over nonresident defendants only if both the forum state's long-arm statute and the Fourteenth Amendment's Due Process Clause are satisfied. Morris v. Barkbuster, Inc., 923 F.2d 1277, 1280 (8th Cir. 1991). South Dakota's long-arm statute confers jurisdiction to the full extent permissible under the Due Process Clause. SDCL § 15-7-2; Kustom Cycles, Inc. v. Bowyer, 857 N.W.2d 401, 406 (S.D. 2014). Therefore, personal jurisdiction over TA Services in South Dakota exists if it comports with due process. Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816, 818 (8th Cir. 1994).

Under the Due Process Clause, personal jurisdiction may be either general or specific. Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924–25 (2011). Courts with general jurisdiction over a defendant may hear "any and all claims" against the defendant even if those claims are unrelated to the defendant's contacts with the forum state. Daimler AG v. Bauman, 571 U.S. 117, 127 (2014) (quoting Goodyear, 564 U.S. at 919). For general jurisdiction to exist, the defendant's contacts with the forum state must be "so 'continuous and systematic'" that the defendant is "essentially at home" there. Goodyear, 564 U.S. at 919 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945)).

Hines cites to Knowlton v. Allied Van Lines, Inc., 900 F.2d 1196, 1199 (8th Cir. 1990), and contends that TA Services is subject to general jurisdiction in South Dakota because TA Services consented to South Dakota jurisdiction through a federal regulatory designation. Doc. 70 at 23. In Knowlton, the Eighth Circuit found that a defendant designating an agent for service of process within a state was sufficient to establish that the defendant had consented to jurisdiction within the state. 900 F.2d at 1199–1200. Yet, the Knowlton decision predates by 24 years the Supreme Court's decision in Daimler AG, which clarified that general jurisdiction over a corporation typically lies only in the place of incorporation and principal place of business. 571

U.S. at 137 ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home. With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." (cleaned up and citation omitted)); id. at 139 n.19 ("We do not foreclose the possibility that in an exceptional case, a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State.").

The Supreme Court's 2017 decision in BNSF Railway Company. v. Tyrrell, 581 U.S. 402 (2017), makes clear that TA Services is not subject to general personal jurisdiction in South Dakota. In BNSF Railway Company, the Supreme Court found BNSF's 2,000 miles of railroad track and more than 2,000 employees in Montana to be insufficient to confer general personal jurisdiction over BNSF in Montana. Id. at 414. The Supreme Court reasoned, "the general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts. Rather the inquiry calls for an appraisal of a corporation's activities in their entirety; a corporation that operates in many places can scarcely be deemed at home in all of them." Id. (cleaned up and citation omitted). The Supreme Court cases of Daimler AG and BNSF Railway make clear that TA Services is not subject to general personal jurisdiction in South Dakota and that Knowlton cannot be read to extend general jurisdiction over TA Services in South Dakota. TA Services is not incorporated in nor has its principal place of business in South Dakota, nor does it have operations "so substantial and of such a nature as to render [it] at home in [South Dakota]." BNSF Ry. Co., 581 U.S. at 413; Daimler AG, 571 U.S. at 137.

Specific jurisdiction, on the other hand, may be based on a defendant's solitary or irregular contact with the forum state. Daimler, 571 U.S. at 127. Specific jurisdiction exists when a

defendant purposefully directs its activities at the forum state "and the litigation results from alleged injuries that 'arise out of or relate to' those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)). Courts may exercise specific jurisdiction over an out-of-state defendant if the defendant has "certain minimum contacts" with the state such that having to defend a lawsuit there "does not offend traditional notions of fair play and substantial justice." Int'l Shoe, 326 U.S. at 316. (cleaned up and citation omitted). These minimum contacts must be based on "some act by which the defendant purposefully avails" himself of the forum state "such that he should reasonably anticipate being haled into court there." Burger King, 471 U.S. at 474–75 (cleaned up and citation omitted). It is the defendant, rather than the plaintiff, who must have minimum contacts in the forum state. Walden v. Fiore, 571 U.S. 277, 284 (2014). Moreover, the defendant's minimum contacts must be "with the forum state itself, not . . . with persons who reside there." Id. at 285; see also id. at 286 ("Due process requires that a defendant be haled into court in a forum state based on his own affiliations with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." (quoting Burger King, 471 U.S. at 475)).

Under Eighth Circuit precedent, five factors guide evaluating whether the constitutional requirements for personal jurisdiction have been met: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience or inconvenience to the parties." K-V Pharm. 648 F.3d at 592 (cleaned up and citation omitted). The first three factors are the most important while the last two are secondary. Id. at 592–93.

Hines contends that TA Services is subject to specific personal jurisdiction in South Dakota because TA Services brokered the specific load that caused the crash and maintains an ongoing FMCSA registration for operations in South Dakota. Doc. 70 at 20–23. Hines asserts that his claim arises directly from TA Services's contacts with South Dakota, South Dakota has a strong interest in the case, and convenience favors South Dakota. Id. at 22. TA Services contends that it did not purposefully avail itself of South Dakota because the only operative fact that occurred in South Dakota was the accident itself. Doc. 71 at 10–12. TA Services notes that it is a Texas-based corporation, who contracted with a Washington limited liability company who then contracted with a Florida based company to transport freight from Prosser, Washington, to Bronx, New York. Id. at 11–12. TA Services argues it did not specify or direct a certain route for the freight and that Proquality exercised exclusive control over the freight. Id. at 12. Thus, TA Services contends that it does not have sufficient contacts with South Dakota to be subjected to personal jurisdiction here. Id. at 10–12.

Under the first two Eighth Circuit factors, TA Services's contacts with South Dakota include maintaining Form BOC-3 process agents in South Dakota for its various authorities under the FMCSA and presumably being a broker and freight forwarder in the lower 48 states where loads associated with TA Services pass through South Dakota. Here, TA Services brokered to Proquality to transport a load of freight from Washington to New York. That led to Proquality hiring a Florida trucker Rosado, who traveled into South Dakota where the accident occurred. These are the only relevant contacts that TA Services has with South Dakota.

Under its Broker Agreement with Proquality, TA Services did not control the route through South Dakota, and as such, did not directly target South Dakota. Doc. 71 at 11–12; see also Doc. 72 ¶ 25 ("Under this Broker Agreement, Proquality was to act as an independent contractor. As

an independent contractor, it exercised exclusive control over the means and methods of carrying out its contractual obligations."). The specific Shipment Confirmation agreement, Doc. 72-10, that governed the shipment at issue provided for the initial and final destination—Prosser, Washington, to Bronx, New York—with a specific timeframe for completion.

This Court may take judicial notice of information contained in maps, and the parties referred to maps during oral argument.[8] See Fed. R. Evid. 201; Cheval Int'l v. SmartPak Equine, LLC, No. 14-5010, 2015 WL 798968, at *4 (D.S.D. Feb. 26, 2015) (finding "courts have taken judicial notice of a geographic location or distance measurement as compiled by Google or a similar website" (collecting cases)). The freight was contracted to travel approximately 2,700 miles from Prosser, Washington, to Bronx, New York, in a matter of four days. Google Maps generates three suggested routes through the Midwest that an individual could take in driving from Prosser, Washington, to Bronx, New York. The three routes are: 1) taking Interstate 94 across North Dakota, 2) taking Interstate 90 across South Dakota, and 3) taking Interstate 80 across Nebraska. All three routes involve approximately 41 to 42 hours of driving time.

Other district courts have considered challenges to personal jurisdiction over interstate brokers in cases arising out of truck accidents. In Brandi v. Belger Cartage Service, Inc., 842 F. Supp. 1337, 1341–42 (D. Kan. 1994), a Kansas district court weighed whether it could exercise personal jurisdiction over a Colorado broker. There, the Colorado broker arranged for a shipment to travel from Kansas City, Missouri to Colorado. Id. at 1341. The court in Brandi focused on two points in determining that it could exercise personal jurisdiction over the Colorado broker. First, "given the nationwide nature of [the broker's] transportation brokerage service, it should

[8] Hines's counsel used a PowerPoint presentation which included two routes—there actually are three main routes—to travel through the Midwest from Prosser, Washington, to Bronx, New York.

certainly have foreseen the possibility of litigation arising in a state through which it had arranged for the shipment of goods," and second that the broker "must have been aware that goods being transported from Kansas City, Missouri to Colorado would travel through Kansas en route." Id. at 1341–42. Thus, the court held that "[k]nowingly arranging for the transport of goods through [the forum state] is sufficient minimum contact with the state." Id. at 1342.

In Turner v. Syfan Logistics, Inc., No. 5:15cv81, 2016 WL 1559176, at *4–8 (W.D. Va. Apr. 18, 2016), a Virginia district court considered whether it could exercise personal jurisdiction over a Georgia interstate broker arranging for the transportation of goods from Chattanooga, Tennessee to Moorefield, West Virginia. The court in Turner looked to the load confirmation and the two quickest possible routes from Chattanooga to Moorefield, "both of which require[d] transportation through Virginia," to determine that the broker had "purposefully targeted Virginia as a state through which [the carrier] would transport the load." Id. at *4. The court cited to Brandi in its analysis, and found similar to Brandi, that the broker "surely knew that goods shipped from Chattanooga, Tennessee to Moorefield, West Virginia would travel through Virginia en route." Id. at *6; see also id. ("[Broker] targeted Virginia as the Load Confirmation contemplated a route that *requires* travel through Virginia." (emphasis added)). Thus, the Virginia court held that it could exercise personal jurisdiction over the Georgia broker. Id. at *8.

In Vogel v. Morpas, No. 17-2143, 2017 WL 5187766, at *5–6 (D. Md. Nov. 9, 2017), a Maryland district court determined that it could exercise personal jurisdiction over a Michigan broker that arranged for a shipment to travel from Hart, Michigan, to Philadelphia, Pennsylvania, which included six intermediate stops with two of those stops occurring in Maryland. The court in Vogel cited to Turner and reasoned that because the agreement the Michigan broker arranged "obligated" the carrier to travel through Maryland, "[the broker] purposefully targeted Maryland

as a state through which [the carrier] would transport the [goods], and such transportation through Maryland was a contemplated future consequence of [the broker's] actions." Id. at *5–6 (cleaned up and citation omitted). Thus, the court held that it could exercise personal jurisdiction over the Michigan broker. Id. at *6.

Finally, in Dixon v. Stone Truck Line, Inc., No. 2:19-CV-000945, 2020 WL 7079047, at *7–8 (D.N.M. Dec. 3, 2020), a New Mexico district court considered whether it could exercise personal jurisdiction over a Kansas broker. There, the broker arranged to ship freight from Corsicana, Texas, to Watsonville, California, in three days. Id. at *4. The court in Dixon held that the broker "purposefully availed itself of the benefits and privileges of New Mexico for [that] shipment" because "it knew, or at least, should have been aware" that the shipment would travel through New Mexico. Id. at 7. The court reasoned that "[i]t was not merely foreseeable that the shipment would be in New Mexico; rather [the broker] hired [the carrier] to transport the shipment in a timeframe and to a destination that *only* logically contemplated a route that would *require* travel through New Mexico." Id. (emphasis added). Thus, the court found that it could exercise personal jurisdiction over the Kansas broker. Id. at 8.

In each of these four cases, the freight necessarily would travel on a route through the forum state, making the broker aware and able to foresee that an accident may cause litigation in the forum state. Here, however, the route from Washington state to New York did not necessarily have to go through South Dakota. Instead, the shipment just as likely could have travelled across Interstate 94 through North Dakota or across Interstate 80 through Nebraska. This distinction matters in attempting to assert specific personal jurisdiction over a broker like TA Services who did not exercise control over the shipment's route. TA Services did not "[k]knowingly arrang[e] for the transport of goods through [South Dakota]." Brandi, 842 F. Supp. at 1341. TA Services

would be aware of a possibility but not a probability that the shipment would travel through South Dakota. See Dixon, 2020 WL 7079047, at *7–8 (finding New Mexico court had personal jurisdiction over an out-of-state broker where "it knew, or at least, should have been aware" that the shipment would travel through New Mexico); Vogel, 2017 WL 5187766, at *5–6 (concluding Maryland court had personal jurisdiction over an out-of-state trucking broker where contract with motor carrier facilitated two intermediate stops in Maryland during route from Michigan to Philadelphia); Turner v. Syfan Logistics, Inc., 2016 WL 1559176 at *5 (holding that Virginia court had personal jurisdiction over out-of-state broker in a case involving a trucking accident in Virginia; court determined that broker, based on practical routes requiring travel through Virginia, was subject to personal jurisdiction); Brandi, 842 F. Supp. at 1341–42 (holding that Kansas court had personal jurisdiction over Colorado broker that arranged shipment from Kansas City, Missouri to Colorado when freight was damaged in Kansas because broker must have been aware that the goods would travel through Kansas, making it foreseeable to the broker that it could be haled into court in Kansas); see also J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 882 (2011) ("The defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State.").

The first two K-V Pharmaceutical factors do not support a finding of personal jurisdiction because TA Services did not specifically target South Dakota, making TA Services's contacts concerning this load "random, fortuitous, or attenuated" to South Dakota. Walden, 571 U.S. at 286 ("Due process requires that a defendant be haled into court in a forum state based on his own affiliations with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." (quoting Burger King, 471 U.S. at

475)). This action arises from a motor vehicle accident in South Dakota caused allegedly by Rosado, a Florida native driving for Proquality, a Washington LLC, who received freight brokered by TA Services, a Texas corporation. TA Services's brokering of the load to Proquality involved contact between Texas and Washington, while Proquality's hiring of Rosado involved contact between Washington and Florida. TA Services's conduct was not specifically targeted at South Dakota. Under the fourth and fifth factors, South Dakota has an interest in providing individuals injured in its state with a forum to redress their injuries, but South Dakota does not appear to be the most convenient forum for a case between a Georgia plaintiff and a Texas corporate defendant brokering freight to a Washington corporation. In weighing all the Eighth Circuit factors and viewing the evidence in the light most favorable to Hines, Hines has failed to establish a prima facie showing that TA Services is subject to personal jurisdiction in South Dakota here; TA Services did not purposefully target South Dakota in arranging a shipment to travel from Prosser, Washington, to Bronx, New York. Creative Calling Sols., 799 F.3d at 979; K-V Pharm., 648 F.3d at 591–92; Burger King, 471 U.S. at 474–75.

**C. Transfer or Dismissal of Case**

This leaves the decision to dismiss or transfer the case. Hines requested at the motion hearing that if this Court finds personal jurisdiction in South Dakota to be lacking, to transfer the case to the Eastern District of Washington. TA Services advocates for dismissal but did not argue against transfer to the Eastern District of Washington as an alternative. The lone claim here is negligent entrustment by TA Services of Proquality, which is headquartered in Puyallup, Washington, within the Western District of Washington. TA Services appears to be subject to personal jurisdiction there as a result of its allegedly negligent hiring of Proquality to transport the load from Washington.

There are three applicable statutes under which a federal court can transfer a case: 28 U.S.C. §§ 1404, 1406, and 1631. Courts across the nation apply these various transfer statutes inconsistently. See 15 Wright & Miller's Federal Practice & Procedure § 3844 (4th ed. 2026). ("Most courts conclude that a district court that has subject matter jurisdiction and that is a proper venue may transfer under Section 1404(a) even though it lacks personal jurisdiction over the defendant. However, some courts have held that Section 1406(a) authorizes transfers in cases in which the transferor is a proper venue but lacks personal jurisdiction over one or more of the defendants. As a result, a few courts have held that a change of venue cannot be ordered under Section 1404(a) if the transferor court lacks personal jurisdiction."); Ellis v. Great Sw. Corp., 646 F.2d 1099, 1110–1111 (5th Cir. 1981) (describing a "hopeless muddle of conflicting reasoning and precedent" regarding the use of sections 1404 and 1406 to effectuate a transfer). Regardless which statute is used to effectuate the transfer, the transferee court's choice of law rules will apply where the transferor court lacks personal jurisdiction over the defendant. See Eggleton v. Plasser & Theurer Export Von Bahnbaumashinen Gesellschaft, MBH, 495 F.3d 582, 587–589 (8th Cir. 2007) (holding transferee court choice of law rules apply under section 1406(a) where plaintiff chooses an improper venue or one that lacks personal jurisdiction over the defendant); Ellis, 646 F.2d at 1110–1111 (holding transfer can be made under section 1404(a) where court lacks personal jurisdiction but "the transferee court must apply the choice of law rules of the state in which it sits" when such a transfer is made); 15 Wright & Miller's Federal Practice & Procedure § 3846 (4th ed. 2026) ("[C]ourts agree that Van Dusen does not apply if the transferor court was an improper venue or lacked personal jurisdiction. In such cases, the transferee court applies the choice-of-law rules it would have applied had the action been filed there originally."); id. § 3827 ("[W]here the

transferor court lacked personal jurisdiction, the transferee court must apply its own law regardless whether the transfer purports to rest on Section 1406(a) or Section 1404(a).").

This Court has considered transfer of this case to the Fort Worth Division of the Northen District of Texas, where TA Services has its principal place of business and thus general personal jurisdiction exists. But that transferee court might apply Texas's statute of limitations to the claim. See Stevenson v. Ford Motor Co., 608 S.W.3d 109, 119–120 (Tex. App. 2020) (stating that Texas Civil Practice and Remedies Code "Section 71.031 is essentially a codified choice-of-law rule governing the timeliness of actions"). Under Tex. Civ. Prac. & Rem. Code § 71.031,

> (a) An action for damages for the death or personal injury of a citizen . . . of the United States . . . may be enforced in the courts of this state, although the wrongful act, neglect, or default causing the death or injury takes place in a foreign state or country if:
> (1) a law of the foreign state or country or of this state gives right to maintain an action for damages for the death or injury;
> (2) the action is begun in this state within the time provided by the laws of this state for beginning the action;
> (3) for a resident of a foreign state or country, the action is begun in this state within the time provided by the laws of the foreign state or country in which the wrongful act, neglect, or default took place; *and*
> (4) in the case of a citizen of a foreign country, the country has equal treaty rights with the United States on behalf of its citizens.

(emphasis added). Texas's statute of limitations on actions for personal injury is two years. Id. § 16.003 ("[A] person must bring suit for . . . personal injury . . . not later than two years after the day the cause of action accrues."). Therefore, this cause of action could be time-barred under Texas law, and transfer could be futile.

The Eighth Circuit has "directed transfer when a plaintiff in good faith filed in the wrong court and the statute of limitations would have run before he could refile properly." Gunn v. U.S. Dep't Agric., 118 F.3d 1233, 1240 (8th Cir. 1997) (citing In re Apex Oil Co., 884 F.2d 343, 346 (8th Cir. 1989); Hempstead Cnty. & Nev. Cnty. Project v. EPA, 700 F.2d 459, 463 (8th Cir. 1983)) (considering transfer under 28 U.S.C. § 1631); see also 14D Wright & Miller's Federal Practice

and Procedure § 3827 (4th ed. 2026) (discussing courts have found transfer to be in the "interest of justice" under section 1406(a) "if the statute of limitations has run since the commencement of the action, so that dismissal might prevent the institution of a new suit by the plaintiff and a resolution on the merits" or "if the plaintiff's belief that venue was proper [and] was in good faith and reasonable"). This Court finds that the transfer of this case is in the interests of justice, given that Hines's claim against TA Services would now be time-barred because any three-year statute of limitations has now run on his claim and the District of South Dakota appears to be a proper venue for the case under 28 U.S.C. § 1391(b)(2). Washington, like South Dakota, has a three-year statute of limitations for personal injury claims. See Wash. Rev. Code § 4.16.080 ("The following actions shall be commenced within three years: . . . (2) an action for taking, detaining, or injuring personal property, including an action for the specific recovery thereof, or for any other injury to the person or rights of another not hereinafter enumerated."). Thus, this Court transfers the case to the Western District of Washington, which appears to have specific personal jurisdiction over TA Services given its contact with and hiring of Proquality within the Western District of Washington, to handle the load in question that originated in Washington, and the lone claim of negligent entrustment by TA Services in hiring Proquality.

## III. Conclusion

Based on the reasons explained above, it is hereby

ORDERED that TA Services's Motion to Dismiss, Doc. 62, is denied in part as the Second Amended Complaint was served on TA Services prior to the running of the three-year limitations period. It is further

ORDERED that Hines's request to transfer in lieu of dismissal is granted and that this case is transferred to the Western District of Washington. It is further

ORDERED that the Clerk of Court is directed to take all steps necessary to effectuate this transfer in an expeditious fashion.

DATED this 14th day of August, 2026.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE